WILLIAM RIDDLE, PROSECUTOR, v. CITY OF ATLANTIC CITY, RESPONDENT.

Argued February 17, 1916—Decided June 6, 1916.

1. A city incorporated under *Pamph. L.* 1902, *p.* 284, has no power, after it has made a contract for the removal and disposal of garbage, to purchase a plant in aid of the contractor or to issue bonds to raise the money to pay therefor.

2. Such a contract must be let to the lowest responsible bidder, and where the invitation to bidders does not provide for it, a subsequent arrangement under which the city is to purchase a plant and machinery and turn over the machinery, without the cost, to the successful bidder, is giving an unfair advantage to one bidder over the others. In such case the contract, as changed,

has not been awarded to the lowest bidder in any legal sense, and an ordinance which undertakes to make the purchase for such purpose is *ultra vires.*

On *certiorari.*

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the prosecutor, *Lewis Starr.*

For the respondent, *Harry Woolton* and *Clarence L. Cole.*

The opinion of the court was delivered by

BERGEN, J. The writ of *certiorari* allowed in this case brings under review two ordinances passed by the commissioners of Atlantic City, one providing for the purchase of certain buildings and equipment "being used for municipal storage purposes, purposes incident to the disposal of waste materials in said city, and other like public purposes," at a cost not to exceed $40,000, and the other providing for the issuing of bonds of the city of Atlantic City in an amount not exceeding $40,000, for the purpose of obtaining money for the payment of the property directed to be purchased by the first ordinance. The ordinance directing the purchase was approved January 6th, 1916, and that authorizing the issuing of the bonds on January 27th, 1916. The prosecutor claims that the city has no legal authority to make the purchase provided for by the first ordinance, and, as a necessary sequence, that the issue of bonds for the purpose of raising money to pay the cost of such purchase was unauthorized.

The pertinent facts necessary to be considered in disposition of this cause are as follows: In 1911 a contract was made by the Atlantic Product Company with the city of Atlantic City by the terms of which the company agreed to collect and dispose of the garbage of the city for a term which expires August 31st, 1916. In carrying out its contract the company cremated the garbage at its plant located on land leased from the city, at Clam creek, within the city limits. In 1915,

some of the citizens of Atlantic City, conceiving that the disposal works as located were detrimental to the city, principally because of the escape of noxious odors, organized a corporation called the Farmers Supply and Product Company, for the purpose of obtaining a contract with the city for the disposal of garbage at some point beyond the city limits, intending to erect a disposal plant at Crab island, about eighteen miles from the city, and when bids were called for by the city for a contract for the collection and disposal of garbage after August 31st, 1916, the new company, being the lowest bidder, was awarded the contract, was duly executed November 19th, 1915, in terms requiring the disposal works to be located outside of the city, the term being five years, from September 1st, 1916. The proceedings up to this point are not assailed, because under this contract the city was not required to provide any part of the plant, and therefore no bond issue was necessary, but the dispute arises over what subsequently occurred. It appears from this record that the promoters of the new company, being to some extent persons interested in certain of the larger hotels of Atlantic City, desiring the removal of the disposal station to Crab island before the opening of the summer season of 1916, in order to abate the alleged nuisance during that period, undertook to acquire the plant of the Atlantic Product Company so that the disposal works might be removed to Crab island as early in the season as possible, and to take over the remainder of the term contracted for by the Atlantic Product Company, and, in order to accomplish this, the new company decided to buy the stock of the old company, or at least to have it in the hands of its friends, and a contract was made between the stockholders of the Atlantic Product Company and a representative of the new company, which provided for the purchase of this stock for $40,000, and thereafter, and on the 8th of December, 1915, the Farmers Supply and Product Company submitted to the city a proposition in which it was represented that it had procured an option for the purchase from the Atlantic Product Company of their garbage plant in the city, at the price of $40,000, and offering to sell the plant, consisting of

buildings and machinery, to the city for the sum of $40,000, retaining without rent so much of the machinery and appliances as it wished in the execution of its contract for five years, or of any renewal thereof, and it was the acceptance of this proposition which the ordinance of purchase manifested. It does not require a great amount of acumen to see that the purpose of this proceeding was to furnish to the new company the capital required to purchase the stock of the old company. The city owned the land, the buildings and machinery belonged to the old company, and there is nothing in this case which shows that the new company was simply purchasing the buildings and machinery for $40,000; all that appears is, that they were to pay, not exceeding $40,000, for the capital stock of the old company. What the city was purchasing was a building on its own land and some machinery, a part of which the new company, according to its proposition, expected to retain and remove to Crab island for the purpose of executing its contract, not only during the summer of 1916, until the old contract expired, but during the continuance of its own contract for five years, and all renewals thereof. The land and the buildings had been leased to the new company by the city, and there was no reason why the city should purchase this plant for the benefit of the new company, and its value, based upon the rental, which was $200 a year, would hardly justify the expenditure of $40,000, the interest upon which would greatly exceed the income which the city was to receive. Stripped of all subtlety the plain effect of the proposed purchase by the city was to furnish the Farmers Supply and Product Company with sufficient capital to buy the capital stock of the old company. It was sought by the form of the ordinance to conceal this purpose, but a court cannot shut its eyes and refuse to see the real purpose which this record discloses. Under the charter of Atlantic City (*Pamph. L.* 1902, *p.* 284, subdivision 19 of section 14) the city is authorized to adopt ordinances, among other things, "to provide for the collection and disposition of offal, garbage, wastes and all refuse matter which may become dangerous to the public health and to establish and empower the local board of health

established, or to be established, in such city, to make collection and disposition thereof or to provide therefor, and in case such board is given such power and authority, it is hereby authorized to accept the same, and given power to collect and dispose of all such refuse matter." This act must be construed in connection with another (*Pamph. L.* 1902, *p.* 200), which authorizes the making of contracts to remove garbage for a term not exceeding five years (*Townsend* v. *Atlantic City,* 72 *N. J. L.* 474), but neither statute authorizes the use of the credit of the city for the benefit of a private corporation, nor does either in express terms authorize the issuing of bonds for the purchase of lands for the purpose of cremating garbage, such purpose not being within the authority found in section 104 of the act of 1902, "for the removal and disposition of the sewage thereof." Nor do we think the act of 1895 (*Pamph. L., p.* 101) authorizes the present issue of bonds. The first section of that act provides that when it shall be necessary to cremate garbage it shall be lawful for the common council or other governing body to purchase, in the name of the city, all necessary lands and real estate, and to erect thereon a building or buildings and equip the same with all necessary appliances. This section applies only when the city is itself carrying on the business. Section 3 provides that where it is more advantageous for the city to have the garbage cremated by persons other than the city, "and at crematories not owned by the municipal corporation," it shall be lawful to provide for such cremation by contract and to raise annually the sum needed to defray expense. This does not authorize the purchase of a plant nor the issue of bonds to pay therefor. The second section of the act of 1895 provides for the issue of bonds where the city is itself cremating, but we can find no authority in the statute which authorizes a city, after it has made a contract, at a price agreed upon for the removal and disposal of its garbage, to purchase property in aid of the contractor and lease it to him for a nominal sum. The bid was made without reference to any such concession, and it would be manifestly

unfair to all other bidders, for, if this be permissible, the city could, after it had made its contract, without reference to any such condition, purchase Crab island and then lease it to a favorite contractor for a nominal sum. The act of 1902 (*Pamph. L., p.* 200) requires that such contracts shall only be made with the lowest responsible bidder, and if after the bid is awarded to the lowest responsible bidder, the city can subsequently expend $40,000 for the benefit of such bidder, without affording all other bidders a like opportunity, then the person to whom the contract is awarded is not the lowest bidder in a legal sense. We think these ordinances are *ultra vires* and ought to be set aside for two reasons—*first,* because the purchase was a mere subterfuge to furnish capital to the Farmers Supply and Product Company, and *second,* because to permit them to stand would be giving the supposed lowest bidder an advantage not accorded to other bidders and amounts, in substance, to the making of another contract not advertised as required by law because the effect is to increase the price paid beyond that which was bid and upon which the contract was based.

The ordinances will be set aside, with costs.